UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| KIMBERLY STARLING, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br>v.<br><br>NEWSMAX MEDIA, INC.,<br><br>        Defendant. | Case No. 4:24-cv-00797-O |

**DEFENDANT'S PARTIAL MOTION TO DISMISS
PLAINTIFF'S COMPLAINT AND INCORPORATED BRIEF IN SUPPORT**

Pursuant to Fed. R. Civ. P. 12(b)(6) and LR 7.1, Defendant Newsmax Media, Inc. ("Newsmax") hereby moves to dismiss the second count in Plaintiff's Complaint (Dkt. No. 1) with prejudice.

**I.   INTRODUCTION**

The Texas Telemarketing Registration Act ("TTRA"), Tex. Bus. & Com. Code § 302.101(a), requires that, before a seller or salesperson makes a "telephone solicitation," it must hold a telemarketer registration certificate issued by the state. In this case, Plaintiff claims that she received a prerecorded message call from Newsmax in June 2023, which invited her to take part in a poll about the then-recent arrest and charges filed against former President Trump. She also alleges that she received two text messages thereafter inviting her to tune in to watch several news segments. In her Second Cause of Action, Plaintiff asserts that the purported prerecorded message call and two text messages violate the TTRA because Newsmax did not hold a telemarketer registration certificate at the time.[1]

---

[1] Plaintiff also alleges that the prerecorded message call violates the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b)(1(A)(iii). However, although the evidentiary record will

Plaintiff's TTRA claim should be dismissed for two independent reasons. First, the TTRA applies only to telemarketing calls, *i.e.*, "telephone solicitations." However, calls inviting participation in national polls—like the complained-of prerecorded message call—are not "telephone solicitations" because they do not encourage the purchase of a service or product; they do not "induce a person to purchase . . . an item" as the statute requires. Tex. Bus. & Com. Code § 302.001(7). The two text messages alleged similarly do not constitute telephone solicitations; on their face, they merely requested that Plaintiff tune in and watch news segments. Nor does the inclusion of a link to a Newsmax web page in the two text messages change the outcome and magically transform the non-marketing, informational messages into solicitations, especially where there was no solicitation on the linked web page.

Second, even if the text messages could be considered "solicitations," Plaintiff's TTRA claim fails as to the messages themselves because the statute's application is limited to telephone "calls." Every court of which Newsmax is aware to have evaluated the issue of whether the TTRA extends to text messages, including a number within this District, has found that it does not.

For either or both of these reasons, the Court should dismiss the TTRA count in the Complaint with prejudice.

## II.    PLAINTIFF'S ALLEGATIONS

Plaintiff alleges that, on June 12, 2023, she received an unsolicited telephone call. When she answered, she heard a prerecorded message stating:

---

demonstrate that claim to be without merit, this Motion does not seek dismissal of the TCPA claim based on how the Complaint is artfully pled without a complete recitation of the facts (and, in particular, an acknowledgement that Plaintiff herself appears to have launched the prerecorded message about which she now complains after a live operator gave her the option to do so).

> Hi. This is Dave Collins calling on behalf of Newsmax. Newsmax is conducting an urgent national poll about the recent arrest and charges against President Trump. Do you think the indictment and charges against President Donald Trump are justified, or just a political attack? Press 1 for justified, the charges are serious[.]

Compl. ¶¶ 28-29.

> She also claims that she subsequently received two text messages, which respectively stated:

> Newsmax: <u>6pm CT</u> Sen. Ted Cruz joins "Rob Schmitt Tonight" to talk Trump indictment, court appearance, more via Dish 216, more: nws.mx/2vw.

> and

> Newsmax: 8p ET Eric Bolling tackles FBI, Bill Barr hypocrisy over Trump indictment! Watch Newsmax: nws.mx/82ced2.

*Id.* ¶ 31. Plaintiff asserts that the hyperlinks contained in the two text messages both led to the following web page that "asked [the text message recipients] to pay to subscribe to NewsMax [sic] through a TV Provider":



**Image One**

*Id.* Plaintiff does not assert that she clicked the links or viewed the web page herself.

3

Based on these allegations, Plaintiff asserts, on behalf of two putative classes, that Newsmax violated the TCPA's prohibition on making a call to her cell phone using an artificial or prerecorded voice, *id*. ¶¶ 52-56 (First Cause of Action), and the TTRA's requirement that a seller hold a Texas telemarketer registration certificate before making telephone solicitations. *Id*. ¶¶ 57-60 (Second Cause of Action).

### III.   LEGAL STANDARD

A Rule 12(b)(6) motion tests the legal sufficiency of a complaint. *Mackin v. Carpenter*, 988 F.2d 1212 (5th Cir. 1993); *Bobo v. City of Wichita Falls, Tex*., 2013 WL 3179499, at *1 (N.D. Tex. June 24, 2013) (O'Connor, J.). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Jacquez v. GEO Int'l Mgmt., LLC*, 2021 WL 2908880, at *5 (W.D. Tex. June 2, 2021) ("Upon a motion brought pursuant to Rule 12(b)(6), a district court must determine whether the plaintiff's pleadings provide 'a short and plain statement of the claim that that [sic] the [plaintiff] is entitled to relief.'") (citations omitted); *see also Hawthorne v. Union Square Fed. Credit Union*, 2017 WL 7798208, at *2 (N.D. Tex. June 20, 2017) (O'Connor, J.) ("Federal Rule of Civil Procedure 8(a) requires a claim for relief to contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'") (citing Fed. R. Civ. P. 8(a)(2)). !

The *Iqbal* Court emphasized the distinction between factual contentions and legal conclusions, and cautioned against accepting as sufficient "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." 556 U.S. at 678; *Whitlock v. Lazer Spot, Inc*., 657 Fed. App'x 284, 286 (5th Cir. 2016). At the pleading stage, only well-pleaded factual allegations are entitled to a presumption of truth. *Ellis v.*

4

*City of White Settlement*, 2023 WL 6260011, at *2 (N.D. Tex. Sept. 26, 2023) (on a Rule 12(b)(6) motion, "the Court's interpretive leniency doesn't apply to legal conclusions, which the Court will not presume to be true") (citing *Iqbal*, 556 U.S. at 678-79). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Hale v. King*, 642 F.3d 492, 503 n.35 (5th Cir. 2011) (internal citations omitted). After *Twombly* and *Iqbal*, "'complaints in civil actions [must] be alleged with greater specificity than previously was required.'" *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted).

IV. **ARGUMENT**

    A. **The TTRA Does Not Apply to Non-Solicitations of the Type Plaintiff Alleges**

The TTRA, by its express terms, requires that a seller or salesperson make a "telephone solicitation" in order for the registration requirement to apply. Tex. Bus. & Com. Code § 302.101(a). "Telephone solicitation," in turn, "means a telephone call a seller or salesperson initiates to induce a person to purchase, rent, claim, or receive an item." Tex. Bus. & Com. Code § 302.001(7). The "definition of solicitation under the [TTRA] is nearly identical to the definition of solicitation under the federal TCPA." *Dukes v. DirecTV LLC*, 2016 WL 11956532, at *3 (N.D. Tex. Nov. 7, 2016) (Fish, J.). The TTRA does not apply to telephone calls that do not constitute "telephone solicitations."[2] *Horton v. Warnock for Ga., Inc.*, 2024 WL 330497, at *5 (N.D. Tex. Jan. 16, 2024) (Horan, J.); *Horton v. Nat'l Republican Senatorial Comm.*, 2022 WL 18673259, at *4 n.2 (N.D. Tex. Nov. 18, 2023) (Toliver, J.) (recommending that TTRA claim be dismissed because the communications at issue sought political donations, not to solicit the purchase of an item) (citation omitted), *R. & R. adopted in relevant part*, 2023 WL 372066, at *6 (N.D. Tex. Jan.

---

[2] Any purported TTRA claim based on the receipt of text messages fails for the additional, independent reason that the statute does not apply to text messages. *See infra* at § IV(B).

5

23, 2023) (Fish, J.) (accepting finding that plaintiff's TTRA claim should be dismissed). Thus, in order to state a TTRA claim, Plaintiff must plead, among other things, facts showing, *inter alia*, that she received a "telephone solicitation." As described below, the Complaint falls woefully flat on this essential element.

Courts within this Circuit and elsewhere approach the question of whether a call constitutes a telephone solicitation with a "measure of common sense." *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012); *Bradford v. Sovereign Pest Control of Tex., Inc.*, -- F. Supp. 3d --, 2024 WL 3851229, at *4 (S.D. Tex. Aug. 10, 2024) (citing cases); *Reese v. Anthem, Inc.*, 2018 WL 1251658, at *5 (E.D. La. Mar. 12, 2018) ("common sense tells the Court that the information in which Plaintiff labels as 'commercial' is undoubtedly informational"). To that end, a call or text message only constitutes a "telephone solicitation" if the message "encourage[s] the listener to make future purchases." *Chesbro*, 705 F.3d at 918; *Suttles v. Facebook, Inc.*, 461 F. Supp. 3d 479, 482-83 (W.D. Tex. 2020) (text messages were not "telephone solicitations" where they did not encourage plaintiff to make a purchase); *Dukes* 2016 WL 11956532, at *2-3 (dismissing TCPA and TTRA claims where plaintiff failed to plead that defendant's calls were made to induce him to make a purchase). Generally, the purported commercial solicitation must be evident "on [the] face" of the prerecorded message or text message itself. *See Horton v. Tarrant Cty. Hosp. Dist.*, 2022 WL 620950, at *2 (N.D. Tex. Mar. 3, 2022) (Pittman, J.) (finding that text message was not a "telephone solicitation" because, "[o]n its face, the message is informational and says nothing about purchasing any product or service").

Plaintiff claims to have received a telephone call on June 12, 2023, which delivered the following prerecorded message:

6

> Hi. This is Dave Collins calling on behalf of Newsmax. Newsmax is conducting an urgent national poll about the recent arrest and charges against President Trump. Do you think the indictment and charges against President Donald Trump are justified, or just a political attack? Press 1 for justified, the charges are serious[.]

Compl. ¶¶ 28-29.

Yet, as the Supreme Court has recognized, "calls to citizens to discuss candidates and issues, . . . *[and to] conduct polls*" constitute political, rather than commercial, speech. *Barr v. Am. Ass'n of Political Consultants*, 591 U.S. 610, 617 (2022) (emphasis added); *see also Berger v. Republican Nat'l Comm.*, 2022 WL 125346, at *3 (E.D. Tex. Jan. 12, 2022) (citing *Barr* for same principle). In fact, the Federal Communications Commission ("FCC")[3] and courts have repeatedly confirmed that polling and survey calls of the type Plaintiff received are not telemarketing. *See, e.g.*, *In re Rules and Regulations Implementing the TCPA*, 7 FCC Rcd. 8752, 8774 ¶ 41 (Oct. 16, 2012) ("We find that the exemption for non-commercial calls from the prohibition on prerecorded messages to residences includes calls conducting research, market surveys, political polling or similar activities which do not involve solicitation as defined by our rules."); *Robert W. Mauthe, M.D., P.C. v. Optum Inc.*, 925 F.3d 129, 134 (3d Cir. 2019) ("Consequently, a marketing firm making calls to conduct pure market research, and a pollster conducting a political poll by telephone, do not violate TCPA's telemarketing prohibition."); *Hunsinger v. Dynata LLC*, No. 3:22-cv-00136-G-BT, 2023 WL 2377481, at *8 (N.D. Tex. Feb. 7, 2023) (Rutherford, J.) (recommending dismissal of complaint and finding that survey and market research calls and text messages were not telemarketing under the TCPA), *R. & R. adopted*, Order (Dkt. No. 24) (N.D. Tex. Mar. 4, 2023) (Fish, J.); *Orea v. Nielsen Audio, Inc.*, 2015 WL 1885936, at *3 (N.D. Cal. Apr. 24, 2015) (holding that a call regarding a marketing survey did not encourage the plaintiff to purchase a product or service and, therefore, was not a telephone solicitation). Accordingly,

---

[3] The FCC is the federal agency charged with interpreting and enforcing the TCPA.

because the alleged prerecorded message call did nothing more than invite Plaintiff to take part in a "national poll," it was not an actionable "telephone solicitation" under the TTRA.

Plaintiff also claims that, after receiving the aforementioned alleged prerecorded message call, she received two text messages, which respectively stated:

> Newsmax: <u>6pm CT</u> Sen. Ted Cruz joins "Rob Schmitt Tonight" to talk Trump indictment, court appearance, more via Dish 216, more: nws.mx/2vw.
>
> and
>
> Newsmax: 8p ET Eric Bolling tackles FBI, Bill Barr hypocrisy over Trump indictment! Watch Newsmax: nws.mx/82ced2.

*Id*. ¶ 31. Plaintiff alleges that the hyperlinks contained in the two text messages both led to a web page—presumably a page on Newsmax's website although Plaintiff does not so plead—that she characterizes as "ask[ing her] to pay to subscribe to NewsMax [sic] through a TV Provider." *Id*. The screenshot of the alleged web page contained within the Complaint (reproduced at Image One above), *id*., however, belies Plaintiff's characterization. There is no solicitation "asking [Plaintiff] to pay to subscribe to Newsmax" whatsoever. Rather, the website simply identifies where Plaintiff could watch Newsmax's coverage of the two segments identified in the text messages.

Regardless, courts have found, in strikingly similar cases, that telephone calls and text messages like those that form the cornerstones to Plaintiff's Complaint are not telephone solicitations. For example, in *Vallianos v. Schultz*, the three plaintiffs alleged that the defendant had collected voter records for individuals who were registered as "No Party Affiliation," including the plaintiffs, and sent text messages to them inviting them to access a link to the defendant's website in order to watch a livestream of a presidential candidate speak at an event that afternoon. 2019 WL 4980649, at *1 (W.D. Wash. Oct. 8, 2019). Specifically, the two text messages at issue stated:

> Howard Schultz will be speaking in Miami at 12:30! Watch live: https://hs.media/mia030.

and

Howard Schultz will be speaking about his vision for America in Miami at 12:30! Watch live: https://hs.media/mia030.

*Id*. In addition to containing the livestream broadcast of the candidate's speech, the hyperlinked website included, among other things, a link to another page at which the text message recipient could order the defendant's book. *Id*. The plaintiffs claimed that the two text messages that they each received were unsolicited "telephone solicitations" sent in violation of the TCPA. *Id*. at *2.

The court disagreed. First, it found that the text messages were not telephone solicitations because "the text messages themselves . . . say nothing about purchasing Defendant's book. Instead, the text messages encourage recipients to view Defendant's speech and provide a link to do so. And . . . the purpose of Defendant's Miami speech was not to encourage viewers to purchase Defendant's book." *Id*. at *3 (internal citations omitted). "[T]he plain language of the text messages did not encourage recipients to purchase Defendant's book." *Id*. Second, the court held that, "[w]ith regard to Defendant's homepage, the mere inclusion of a link to a website on which a consumer can purchase a product does not transform the whole communication into a solicitation." *Id*. ("the invitation to purchase Defendant's book was just a portion of Defendant's homepage, which is not enough to turn the text message into a solicitation"). It further explained that, "most importantly, Defendant's homepage was not the focus of the text messages. Defendant's homepage was just a way to facilitate what Defendant's text message actually encouraged—viewing Defendant's speech[.]" *Id*. For these reasons, the court found that the text messages urging recipients to access the defendant's website in order to watch a political speech were not "telephone solicitations." *Id*. The TCPA claim, thus, was "dismissed with prejudice because the claim could not be saved with any amendment." *Id*. Because the alleged prerecorded message call and text messages Plaintiff claims to have received from Newsmax in this case did

not induce her to purchase any Newsmax product, they were not "telephone solicitations" subject to the TTRA.

Nor does Plaintiff's strained attempt to avoid this result and gin up actionable communications by pointing to the hyperlinks in the two text messages alter this outcome. It is well-established in this District and elsewhere that the mere inclusion of a hyperlink in a text message to a website from which a consumer can purchase a product or service does not make that message a telephone solicitation. *See, e.g.*, *Tarrant Cty. Hosp.*, 2022 WL 620950, at *2 ("even if the alleged text message contained a link to [defendant's] website, that link does not transform an informational message into an advertisement"); *Vallianos*, 2019 WL 4980649, at *3; *Edelsberg v. Vroom, Inc.*, 2018 WL 1509135, at *4, *6 (S.D. Fla. Mar. 27, 2018) (rejecting plaintiff's argument that text message was a telephone solicitation because it "included a link to [defendant's] website and [defendant's] overarching business model involves both the buying and selling of cars," and concluding that the sheer possibility that plaintiff could be diverted into a purchase transaction on defendant's website did not transform the messages into solicitation); *Phan v. Agoda Co. PTE, Ltd.*, 351 F. Supp. 3d 1257, 1266 (N.D. Cal. 2018) (holding that inclusion of a link to a mobile app containing marketing material was not sufficient to transform a non-advertisement text message into actionable telemarketing); *Reese*, 2018 WL 1251658, at *5 (otherwise informational text messages that contained a hyperlink to defendant's website from which a consumer could navigate to enroll in for-pay or free CPR classes was not telemarketing or commercial in nature); *Smith v. Blue Shield of Cal. Life & Health Ins. Co.*, 228 F. Supp. 3d 1056, 1067 (C.D. Cal. 2017) ("The mere fact that parts of [defendant's] website contain[ ] the capability of allowing consumers to engage in

commerce does not transform any message including [a link to a different section of its website] into [a telephone solicitation]."); *MacKinnon v. Hof's Rests., Inc.*, 2017 WL 5754308, at *1 (E.D. Cal. Nov. 28, 2017) (holding that inclusion of a link in a text message did not transform a non-marketing message into a solicitation).

Accordingly, the prerecorded message call and text messages alleged in the Complaint do not constitute "telephone solicitations" and, thus, are not covered by the TTRA. The Second Cause of Action should be dismissed with prejudice for this reason alone.

### B. The TTRA Does Not Apply to Text Messages

Plaintiff's TTRA claim fails as a matter of law for an additional reason: the TTRA does not extend to text messages.

The TTRA requires that certain entities that "make a telephone solicitation" obtain a telemarketing registration certificate before doing so. Tex. Bus. & Com. Code § 302.101(a). The statute defines "telephone solicitation" to mean, in relevant part, "a telephone *call* a seller or salesperson initiates to induce a person to purchase, rent, claim, or receive an items." *Id*. § 302.001(7) (emphasis added); *Powers v. One Techs., LLC*, 2022 WL 2992881, at *3 (N.D. Tex. July 28, 2022) (Starr, J.) (quoting same and emphasis in original). Thus, by its express terms, the TTRA applies only to telephone calls. *Powers*, 2022 WL 2992881, at *3-4 (contrasting TTRA with different Texas telemarketing law that expressly extends to text messages). The TTRA does not extend to text messages whatsoever.

Courts in this District and elsewhere consistently dismiss TTRA claims arising out of allegedly unsolicited marketing text messages, concluding that, "[u]nder a plain reading of the Code, Chapter 302 [the TTRA] does not apply to text messages." *Id*. at *4 (dismissing TTRA claim with prejudice because "[t]he alleged violations are about text messages, not phone calls"); *Horton*

11

*v. Multiplan Inc.*, No. 3:23-cv-02098, 2024 WL 3380236, at *9 (N.D. Tex. June 7, 2024) (Rutherford, J.) (holding that the TTRA "do[es] not apply to text messages" and "[b]ecause Horton does not allege any unlawful calls, only texts," his TTRA claim was dismissed), *R. & R. adopted*, Order (Dkt. No. 34) (N.D. Tex. July 11, 2024) (Scholder, J.); *Guadian v. Utd. Tax Defense LLC*, 2024 WL 140249, at *7 n.4 (W.D. Tex. Jan. 12, 2024) (on *pro se* plaintiff's motion for default judgment, noting that Section 302.101 does not apply to text messages "[u]nder a plain reading of the [Texas Business and Commerce] Code[,]" and, thus, it was "proper" for plaintiff not to seek damages under the TTRA for the three text messages he received from defendant); *Pepper v. GVG Cap. LLC*, 2023 WL 205297, at *4-5 (S.D. Tex. Jan. 17, 2023) (rejecting plaintiff's arguments that the TTRA should be liberally construed as a consumer protection statute and that "calls" under the statute extends to text messages like the TCPA, holding that "[t]he plain meaning of 'telephone call' does not encompass text messages," and dismissing TTRA claim with prejudice).[4]

Because the TTRA does not extend to text messages—not even to marketing ones, which the two alleged in the Complaint are not in any event—Plaintiff cannot state a TTRA claim based on the receipt of text messages, and the claim should be dismissed.

## V.     CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiff's TTRA claim (Second Cause of Action) with prejudice.

---

[4] *See also Horton v. 360 Digital Mktg., LLC*, No. 3:22-cv-2475, 2024 WL 3032447, at *7 (N.D. Tex. May 13, 2024) (Horan, J.) (recommending that default judgment not issue as to plaintiff's TTRA claim and citing the *Powers* Court's "reject[ion of] the plaintiff's argument that 'call under Chapter 302 includes 'text messages'"), *R. &. R. adopted*, Order (Dkt. No. 42) (N.D. Tex. June 17, 2024) (Brown, J.); *Warnock for Ga.*, 2024 WL 330497, at *5 (same as *360 Digital Mktg.*); *Nat'l Republican Senatorial Comm.*, 2022 WL 18673259, at *4 n.2 (noting that "chapter 302 'does not apply to text messages'") (citation omitted).

| | |
|---|---|
| Dated: October 10, 2024 | Respectfully submitted, |
| | **STEPTOE LLP** |
| | */s/ Paul J. Stancil*<br>Paul J. Stancil<br>State Bar No. 00797488<br>14106 Rocksprings Court<br>Dallas, TX 75254<br>Telephone: (713) 221-2321<br>pstancil@steptoe.com |
| | Daniel S. Blynn (admitted *pro hac vice*)<br>Emily C. Tifft (pro hac vice forthcoming)<br>1330 Connecticut Avenue, NW<br>Washington, DC 20036<br>Telephone: (202) 429-3000<br>dblynn@steptoe.com<br>etifft@steptoe.com |
| | **ATTORNEYS FOR DEFENDANT** |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on October 10, 2024, a copy of the foregoing document was electronically filed with the Clerk of the Court and served on all counsel of record via the CM/ECF system.

*/s/ Paul J. Stancil*
Paul J. Stancil